IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | CV 20–176–M–DLC |
| Plaintiff and Counter-Defendant, | ORDER |
| vs. | |
| NORTHWEST PAINTING, INC. d/b/a NORTHWEST FACTORY FINISHES, | |
| Defendant and Counter-Plaintiff. | |

Before the Court is the Defendant and Counter-Plaintiff Northwest Painting, Inc.'s ("Northwest") motion to join necessary party and stay proceedings (Doc. 8) and Plaintiff and Counter-Defendant the Cincinnati Insurance Company's ("Cincinnati") partial motion to dismiss (Doc. 12). For the reasons stated herein, the Court will grant Cincinnati's partial motion to dismiss, deny Northwest's motion to join an indispensable party, and grant in part and deny in part Northwest's request for a stay.

//

//

//

1

## BACKGROUND[1]

From February 12, 2018 to February 12, 2021, Northwest was insured by a commercial general liability policy issued by Cincinnati ("the Policy"). (Doc. 6 at 11–12.) The Policy provides, among other things, that:

> [Cincinnati] will pay those sums that [Northwest] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Cincinnati] will have the right and duty to defend [Northwest] against any 'suit' seeking those damages. However, [Cincinnati] will have no duty to defend [Northwest] against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

(*Id.* at 11.)

Under the Policy, in order to be covered, such "bodily injury" or "property damage" must occur within the policy period and be the result of an "occurrence." (*Id.*) The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 12.) "Property damage" is defined as physical injury to tangible property, including "resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (*Id.*) Moreover, under the Policy, Cincinnati has a duty to defend Northwest against "any 'suit' seeking damages

---

[1] Because this matter comes before the Court, in part, through a Rule 12(b)(6) motion to dismiss (Doc. 12) attacking the sufficiency of Northwest's counterclaims, the Court accepts the facts alleged in that pleading (Doc. 6) as true. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). To the extent resolution of the motion to join necessary party and stay proceedings (Doc. 8) requires consideration of additional facts, the Court discusses those facts in the specific context of those motions below.

because of 'property damage.'" (*Id.* at 14.)

Various persons have asserted claims against Northwest alleging that defective siding was installed on their property. (*Id.* at 4; 11–12.) One of these property owners, Desjarlais, has filed suit against Northwest in Montana state court ("the Desjarlais lawsuit"). (*Id.* at 12.) Northwest notified Cincinnati of this claim and it is providing a defense, subject to a full reservation of rights. (*Id.*) None of the other claims "have been filed in court," but other claims continue to "pour in" and Northwest has "paid out-of-pocket to" settle "certain claims." (*Id.* at 4, 12.) Northwest does not allege such settlements were entered into with Cincinnati's consent.

Cincinnati has filed this declaratory judgment action against Northwest seeking, among other things, a declaration that it has no duty to indemnify or defend Northwest as to the Desjarlais lawsuit. (*Id.* at 12; *see also* Doc. 1.) Desjarlais was not named as a party to Cincinnati's declaratory judgment action. (Doc. 6 at 12.) Northwest has counterclaimed alleging, among other things, that Cincinnati's has breached or engaged in an anticipatory repudiation of its duty to defend and further breached its duty to indemnify. (Doc. 5 at 14–15, 17–18.)

## I.    Motion to Dismiss (Doc. 12).

The Federal Rules of Civil Procedure authorize a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). "In order to survive a rule

12(b)(6) motion to dismiss, a [counter-plaintiff] must allege enough facts to state a claim to relief that is plausible on its face." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "A claim has facial plausibility when the [counter-plaintiff] pleads content that allows the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged." *Id.*

Importantly, a dismissal under Rule 12(b)(6) "is essentially a ruling on a question of law" and "the purpose" of 12(b)(6) motions "is to test the legal sufficiency of the complaint." *North Star Intern v. Arizona Corp. Com'n*, 720 F.2d 578, 580–81 (9th Cir. 1983). Because this Court is exercising diversity jurisdiction, it applies the law of Montana when examining the sufficiency of Northwest's breach of contract counterclaims. *Stanford Ranch, Inc. v. Maryland Cas. Co.*, 89 F.3d 618, 624 (9th Cir. 1996). Cincinnati argues that Northwest's two breach of contract counterclaims fail to state a claim upon which relief can be granted and are therefore properly dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 13 at 1.) The Court will address each claim in turn.

## A.     Breach of Contractual Duty to Defend.

The agreement between an insurer and insured is a contract "subject to the general rules of contract law." *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 411 (Mont. 2013). "Under contract law," a direct breach of contract action

arises when, "without legal excuse, [a party fails] to perform any promise that forms the whole or part of a contract." *Id.*  As such, when an insurance contract contains a duty to defend, the insurer breaches this duty by failing to furnish a defense after "a complaint against [its] insured alleges facts which, if proved, would result in coverage." *Tidyman's Mgmt. Servs. Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014).

An "anticipatory breach of contract" claim may also lie when an insurer repudiates its future obligations, such as by repudiating its obligation to furnish a defense for future claims. *Lorang v. Fortis Ins. Co.*, 192 P.3d 186, 208 (Mont. 2008).  In order to prevail, the insurer's repudiation must be "entire, absolute and unequivocal" as opposed to simply an "expression of intent not to perform." *Chamberlin v. Puckett Const.*, 921 P.2d 1237, 1239 (Mont. 1996); *see also STC, Inc. v. City of Billings*, 543 P.2d 374, 379 (Mont. 1975) (holding an "expression on intent not to perform, or not to be bound, standing alone, is not enough . . . . nor is a mere assertion that a party will be unable, or will refuse, to perform his contract an anticipatory renunciation").

From these principles, the Court can derive several irreducible minimum allegations necessary to plausibly state a direct or anticipatory repudiation breach of contract claim under Montana law.  First, the insured must allege the existence of an insurance contract between it and the insurer that contains a duty to defend.

Second, for a direct breach of contract claim, the insured must allege the insurer failed to furnish a defense after a complaint was filed against the insured that alleges facts which, if proven, would result in a covered liability under the insurance contract.  Third, for an anticipatory breach of contract claim, the insured must allege facts plausibly establishing the insurer has entirely, absolutely and unequivocally repudiated its contractual obligation to provide a defense for future claims.

Reviewing either Northwest's direct or anticipatory repudiation breach of contractual duty to defend claim with these principles in mind reveals they fail to plausibly state a claim upon which relief can be granted.  As explained above, in order to sustain the direct breach of contract claim, Northwest must allege facts plausibly establishing that: (1) Cincinnati owes it a contractual duty to defend; and (2) failed to furnish a defense after a claim was filed against Northwest that, if proven, would be covered.  Northwest succeeds in the first regard by alleging it and Cincinnati are parties to an insurance contract containing a duty to defend. (Doc. 6 at 11–14.)  It is in the second regard where Northwest's direct breach of contract claim loses its plausibility.

As Cincinnati argues, the allegations in Northwest's counterclaim demonstrate the only claim possibly triggering the contractual duty to defend is the Desajarlais lawsuit.  (*Id.* at 11–13.)  And Northwest's allegations further establish

that Cincinnati has been providing a defense subject to a reservation of rights.  (*Id.* at 12.)  In other words, taking Northwest's counterclaim as alleged, Cincinnati has not breached its contractual duty to defend, it is actively fulfilling it.  Under these allegations, Northwest cannot plausibly state a claim for direct breach of contract. This claim will be dismissed.

Northwest's anticipatory repudiation breach of contract claim fairs no better. Here, the problem is not so much with Northwest's allegations, but their implausible application to the Montana's law regarding anticipatory repudiation claims.  Northwest claims that Cincinnati is liable for anticipatory repudiation because it: (1) filed the instant declaratory judgment action; (2) asserted it has no duty to defend; and (3) reserved its right of reimbursement.  (*Id.* at 15.)  Cincinnati argues it is just following the procedure endorsed by the Montana Supreme Court when a lawsuit triggers the duty to defend but the insurer maintains it ultimately presents an uncovered claim.  The Court agrees.

Montana law unambiguously outlines the path an insurer should follow when its insured is named in a lawsuit, but the insurer contests its obligation to provide a defense.  First, an insurer should initially provide a defense, because if it incorrectly withholds one it will be liable for all "natural and ordinary consequence[s] of the breach, including" the value of any settlement, costs, and attorneys' fees.  *Independent Milk & Cream Co. v. Aetna Life Ins. Co.*, 216 P.

1109, (Mont. 1923).

Second, if an insurer intends to recoup the costs incurred in defending its insured, it should timely and explicitly reserve "its right to recoup defense costs." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Res., Inc.*, 108 P.3d 469, 479 (Mont. 2005). Finally, the insurer should expeditiously file a separate declaratory judgment action so that the dispute regarding the contractual duty to defend can be resolved. *Tidyman's Mgmt. Servs., Inc.*, 330 P.3d at 1149; *see also State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 191, 205 (noting that, in situations akin to that presented here, the Montana Supreme Court has "repeatedly admonished insurers" to "defend the insured and file a declaratory judgment action to discern coverage"). Such conduct is not the anticipatory repudiation of a contractual duty to defend but is instead the strict adherence to various teachings from the Montana Supreme Court.

Stated another way, Northwest's allegations that Cincinnati has furnished a defense against the Desajarlais lawsuit under a reservation of rights and then filed a declaratory judgment action on the issue is not the sort of entire, absolute and unequivocal repudiation of a contractual obligation necessary to state a claim. Instead, under the facts Northwest itself alleges, the only plausible theory advanced is that Cincinnati has *conditionally* repudiated its duty to defend (while actively continuing to honor it) with such repudiation only becoming entire, absolute, and

unequivocal upon a favorable ruling in the instant declaratory judgment action. The Court will grant Cincinnati's motion to dismiss as to both of Northwest's breach of contractual duty to defend counterclaims.

### B.    Breach of Contractual Duty to Indemnify.

Northwest's remaining breach of contract counterclaim complains that Cincinnati flouted its duty to indemnify by refusing to settle claims brought by other claimants, which Northwest was forced to then settle at its own cost, out of pocket.  (Doc. 6 at 17.)  Cincinnati argues that this claim should be dismissed because the Policy prohibits settlement of claims by Northwest without Cincinnati's consent.  (Doc. 13 at 7–8.)  Cincinnati maintains it is proper to examine the Policy, an outside material, in adjudicating this 12(b)(6) motion because Northwest's counterclaim references it.  (*Id.* at 7.)  Northwest endorses this approach and does not directly contest Cincinnati's position regarding the Policy's prohibition on unapproved settlements by the insured.  (Doc. 19 at 3.)

In adjudicating a Rule 12(b)(6) motion, this Court generally cannot consider materials other than the complaint without converting the motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  This general rule gives way, however, when the extraneous material are "central to the [counterclaimant's] claim, and no party questions the authenticity of the document."  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir.

2007).  Here, the Policy is central to Northwest's counterclaims, which focuses nearly exclusively on whether Cincinnati has breached its contractual obligations under the Policy.  (*See generally* Doc. 6.)  Moreover, neither party disputes the portions of the Policy attached to Cincinnati's opening brief.  Accordingly, the Court will consider the excerpts of the Policy provided by Cincinnati.

The Policy's commercial general liability coverage and umbrella liability coverage both provide that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [the insurer's] consent."  (Doc. 13-1 at 5, 8.)  Under Cincinnati's view, because Northwest's breach of contractual duty to indemnify counterclaim fails to establish that Northwest's out-of-pocket settlements were reached with Cincinnati's consent, it fails to state a claim.  (Doc. 13 at 7–8).

Northwest puts up little resistance in response.  Instead, Northwest argues that Cincinnati has anticipatorily repudiated its duty to indemnify by filing the instant declaratory judgment action.  (Doc. 19 at 6–7.)  Additionally, Northwest suddenly and confusingly devotes significant argument in its response brief to the notion that Cincinnati has breached the covenant of good faith and fair dealing by failing to properly investigate claims.  (Doc. 19 at 7–10.)  Neither of these arguments accurately reflect the claims advanced in Northwest's counterclaim or otherwise contest the substance of Cincinnati's argument regarding the duty to

indemnify claim.

For one, unlike the breach of contractual duty to defend claim addressed above, Northwest does not premise its breach of the contractual duty to indemnify counterclaim on a theory of anticipatory repudiation.  (Doc. 6 at 17–18.)  Further, Northwest's counterclaim does not mention the duty of good faith and fair dealing at all, let alone assert a stand-alone claim couched under an ostensible failure to investigate.  (*See generally id.*)  Accordingly, the Court will disregard these arguments as they either distort the pleadings, are an attempt to assert new claims, or have no bearing on whether Northwest has plausibly pled a claim for breach of the contractual duty to indemnify.  *See Provencio v. Vazquez*, 258 F.R.D. 626, 639 (E.D. Cal. 2009) ("Raising a completely new theory of liability, with only attenuated connection to the complaint, in a brief in opposition to a motion to dismiss" is improper and can only be accomplished after requesting leave to file an amended complaint).

Left with little else, the Court has no choice but to adopt Cincinnati's argument.  *In re Morrissey*, 349 F.3d 1187, 1189 (9th Cir. 2003) (noting it is not a court's job to develop a party's arguments for it).  The Policy, upon which Northwest's counterclaim necessarily relies, establishes that a duty to indemnify for out-of-pocket settlements only arises if such settlements are brokered with Cincinnati's consent.  Northwest's counterclaim does not contain any allegations

11

that it obtained consent from Cincinnati prior to entering into the out-of-pocket settlements at issue.  Consequently, under these facts, Northwest's breach of the contractual duty to indemnify counterclaim lacks facial plausibility and will be dismissed.

## II.      Motion to Join Necessary Party (Doc. 8).

Northwest maintains that Desjarlais, the plaintiff in the only underlying lawsuit against Northwest, must be joined as an indispensable party to Cincinnati's instant declaratory judgment action.  (Doc. 9 at 14–19.)[2]  Cincinnati does not oppose joining Desjarlais to this lawsuit but disagrees that she must be joined as an indispensable party.  (Doc. 8 at 11, 26–29.)   The Court concludes that Desjarlais is not an indispensable party and otherwise declines to join her to this action at this time.

Rule 19 of the Federal Rules of Civil Procedure governs the required joinder of parties.  To determine whether a party must be joined pursuant to Rule 19, "a court must undertake a two-part analysis."  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  That is, this Court "must determine: (1) whether an absent party is necessary to the action; and then, (2) if the party is necessary, but cannot be joined, whether the party is indispensable such that in equity and good

---

[2] The Court notes Northwest appears to raise this issue as a free-standing Rule 19 motion, requesting the joinder of Desjarlais as relief, instead of through a Rule 12(b)(7) motion for which the remedy would be dismissal of Cincinnati's operative complaint.

conscience the suit should be dismissed." *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1204 (9th Cir. 2020).

As to the first inquiry—whether the party is necessary—the Court must determine whether: (1) "complete relief can be afforded if the action is limited to the existing parties;" or (2) "the absent party has a 'legally protected interest' in the subject of the action and, if so, whether the party's absence will 'impair or impede' the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest." *White v. University of Cal.*, 765 F.3d 1010, 1026 (9th Cir. 2014). "If the answer to either of those questions is affirmative, then the party is necessary and must be joined." *Id.* This inquiry is fact specific and driven largely by practical considerations. *Id.* The parties hone their arguments in on the second prong—legally protected interest— so the Court will focus its attention there as well.

Whether an injured third-party claimant is a necessary party to a declaratory judgment action between an insurer and its insured appears to be an open question in the Ninth Circuit. *Colony Ins. Co. v. Vantaggio Farming Corp.*, 2017 WL 3478998, *4 (E.D. Cal. 2017). Authority from other courts is both numerous and conflicting. *See* 7 Mary Kay Kane, *Federal Practice and Procedure* § 1619, 312– 14 (3d ed. 2021). District courts within the Ninth Circuit have generally found injured third-party claimants to be necessary parties to declaratory judgment

actions between an insured and insurer, when the subject of that action is whether the third-party claim is covered by available insurance proceeds. *Colony Ins. Co. v. Events Plus, Inc.*, 585 F. Supp. 2d 1148, 1156–57 (D. Ariz. 2008); *Greenwich Ins. Co. v. Rodgers*, 729 F. Supp. 2d 1158, 1164–65 (C.D. Cal. 2010); *Navigators Ins. Co. v. K & O Contracting, LLC,* 2013 WL 1194722, *2–4 (D. Or. 2013); *Allstate Ins. Co. v. King*, 2013 WL 5302494, *1 (W.D. Wash. 2013); *Colony*, 2017 WL 3478998 at *4–5. The circuit courts of appeal that have addressed the issue generally agree. *Rangers Ins. Co. v. United Housing of N.M., Inc.*, 488 F.2d 682, 682–84 (5th Cir. 1974); *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 354 n.5 (3d Cir. 1986); *American Safety Cas. Ins. Co. v. Condor Assoc., Ltd.*, 129 Fed. Appx. 540, 541–43 (11th Cir. 2005) (unpublished).

Despite the weight of this persuasive authority, the Court elects to forge its own path given the circumstances of this case. *Bakia v. L.A. Cty*, 687 F.2d 299, 301 (9th Cir. 1982) (holding "[t]here is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a)" and that the "determination is heavily influenced by the facts and circumstances of each case"). Specifically, the Court is skeptical Desjarlais has a legally protected interest in the Rule 19(a) sense. The Ninth Circuit has been clear a mere "financial stake" in the outcome of an action is insufficient to constitute a legally protected interest. *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty v. California*, 547

F.3d 962, 970 (9th Cir. 2008).  In this case, it is hard to see how Desjarlais' interest in this lawsuit extends beyond a mere financial interest.

To be sure, Desjarlais obviously has an interest in a favorable coverage determination in this action, because without one she will possibly be left with an uncovered judgment.  But this interest is nothing more than "speculation about a future event," mainly that Desjarlais will *possibly* prevail in the underlying action and then *possibly* be unable to collect on a judgment against Northwest because of a lack of attachable assets.  *Id.*  This is insufficient to constitute a legally protected interest under Rule 19(a).  *Id.*  Moreover, this Court has previously rejected the notion that anyone has a *legally* protected interest in having their judgments covered by insurance proceeds.  *Philadelphia Indem. Ins. Co. v. Great Falls Rescue Mission*, 2021 WL 2916946, *7 (D. Mont. 2021) ("The law, as a general matter, does not entitle one to have an actionable claim covered by insurance").  Put another way, while Desjarlais may very well have an interest in ensuring its claim is covered by the Policy, this is not the sort of legally protected interest that renders someone a necessary party within the meaning of Rule 19(a).

Moreover, the Court is skeptical that even if Desjarlais had a legally protected interest, that such interest would not be protected without joinder, or that either Northwest or Cincinnati would be subject to multiple, inconsistent legal obligations with respect to that interest.  Fed. R. Civ. P. 19(a)(1)(B).  The parties

correctly focus this inquiry on whether Desjarlais, if absent from this action, would be bound by any judgment of this Court regarding the availability of coverage for her claim. (Docs. 9 at 17–18; 11 at 27–29.) Northwest maintains Desjarlais "would not necessarily be bound by the outcome of this Court's determination of coverage liability," citing a case involving the application of res judicata. (Doc. 9 at 17.) Cincinnati strongly disagrees, contending that there is no risk of double, multiple, or otherwise inconsistent obligations because "[c]ollateral estoppel and/or res judicata would apply to Desjarlais and the property owners without their joinder because they are in privity with Northwest on the issue of coverage." (Doc. 11 at 27.)

Neither claim (res judicata) or issue (collateral estoppel) preclusion will apply "to a party that was not a party in the prior proceeding" unless they are in privity with a party to that prior proceeding. *Denturist Ass'n of Mont. v. State Dept. of Labor and Indus.*, 372 P.3d 466, 469 (Mont. 2016).[3] Accordingly, the question becomes whether Desjarlais is in privity with either Cincinnati or Northwest, such that a coverage determination in this action would be binding upon her, and thus, eliminating the risk of double, multiple, or inconsistent obligations. Two parties are in privity with one another when they "are so closely

---

[3] As Cincinnati correctly points out, because this is a diversity action, issues regarding the prospective application of res judicata or collateral estoppel require an examination of Montana law. *See Pierson v. Hudson Ins. Co.*, 839 Fed. Appx. 102, 103 (9th Cir. 2020) (unpublished).

aligned in interest that one is the virtual representative of the other." *Denturist Ass'n of Mont.*, 372 P.3d at 469. Ultimately, privity is a "factual determination of substance, not mere form," requiring a "consideration of the realities of litigation." *Id.* (internal citations omitted).

Applying these principles, the Court finds the interests of Desjarlais and Northwest are sufficiently aligned to justify the conclusion that collateral estoppel or res judicata would likely bar relitigation of this coverage dispute in a subsequent action. Desjarlais and Northwest seek the same endgame—coverage for a potential liability event on the part of Northwest. There is no reason to conclude that Northwest will advance different or worse arguments than Desjarlais as to the issue of coverage when they are both after the same outcome. Consequently, the Court finds that even if Desjarlais had a legally protected interest within the meaning of Rule 19(a)(1)(B) (which she does not), her absence would neither impede her ability to protect this interest or create a risk of double, multiple, or inconsistent legal obligations.

Having concluded that Desjarlais is not a necessary party, the Court will deny Northwest's motion to join her as an indispensable party. The Court also declines to join Desjarlais to this action simply because Cincinnati does not oppose this result. The Court will not thrust a party into this lawsuit on the basis of an agreement of the parties. Either party is free to motion for leave to amend their

17

respective pleadings to advance a claim against Desjarlais.  Desjarlais is also, of course, free to motion this Court for leave to intervene under a theory of mandatory or permissive joinder, should she so desire.  The Court will adjudicate the substance of those motions in the event they are actually filed.

### III.    Motion to Stay (Doc. 8).

As a final matter, Northwest urges this Court to stay this action pursuant to *Landis v. North Am. Co.*, 299 U.S. 248 (1936) pending resolution of the underlying Desjarlais lawsuit.  (Doc. 9 at 19–26.)  Cincinnati disputes that *Landis* governs, instead relying on *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942), and in any event opposes a stay of this proceeding.  (Doc. 11 at 11–16, 18–26.)  Upon a review of the relevant factors, the Court will enter a limited stay of this matter halting further proceedings regarding an on-the merits determination of whether the claims advanced in the Desjarlais lawsuit are covered by the Policy.  Northwest's request for a stay will be denied in all other respects.

Before weighing the competing considerations related to a stay, the Court must determine whether *Landis* or *Brillhart* governs.  The Court is persuaded by Northwest's argument that the former applies.  *Brillhart* is not a good fit for this case for several reasons.  First, *Brillhart* arose in the context where there was a parallel state court proceeding "presenting the same issues, not governed by federal law" and "between the same parties."  316 U.S. at 495.  Here, the Desjarlais

18

lawsuit neither raises identical issues or has identical parties.  (*See generally* Doc.
5-1.)  These differences caution against applying *Brillhart* at the expense of
*Landis*.  *Safeco Ins. Co. of Am. v. Nelson*, 2020 WL 3791675, *3 (S.D. Cal. 2020)
(finding *Brillhart* inapplicable where the underlying state court action "does not
center on, or even address the issue of whether [the insurer] owes [the insured] a
duty to defend or indemnify, and [the insurer] is not a party" to the state court
action).

Second, *Brillhart* governs situations in which a party urges a district court to
decline to exercise jurisdiction over an otherwise proper declaratory judgment
claim.  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 668 (9th Cir. 2005)
(construing the *Brillhart factors* as a mechanism by which a district court
determines whether to "accept jurisdiction or not" over a declaratory judgment
claim).  As such, *Brillhart* applies when a party urges the district court to dismiss
or remand a declaratory judgment claim altogether, not when a party simply
requests that adjudication of that claim be stayed.  *See Government Employees Ins.
Co. v. Dizol*, 133 F.3d 1220, 1225–26 (9th Cir. 1998); *see also Nelson*, 2020 WL
3791675 at *3 (declining to apply *Brillhart* where the issue was whether "a stay of
proceedings is appropriate," not whether jurisdiction should be declined).

Finally, the Ninth Circuit has made clear that application of *Brillhart* is
inappropriate when an action presents at least one independent non-declaratory

judgment claim.  *Dizol*, 133 F.3d at 1225; *see also Zurich Am. Ins. Co. v. Omnicell, Inc.*, 2019 WL 570760, \*4–5 ("[w]here additional claims exist independent of the request for a declaration, the Ninth Circuit has held that the *Brillhart* factors do not apply").   A "claim is independent if it would continue to exist if the request for a declaration simply dropped from the case."  *Scotts Co. LLC v. Seeds, Inc.*, 688 F.3d 1154, 1158 (9th Cir. 2012).  Here, while declaratory judgment claims predominate, at least one non-declaratory judgment counterclaim is brought by Northwest under Montana's Unfair Trade Practices Act.  (Doc. 6 at 18–19.)  Based on the foregoing, the Court declines to apply *Brillhart* and will instead focus its analysis on the *Landis* factors.

Under *Landis*, this Court possesses the "discretionary power to stay proceedings in its own court."  *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  A *Landis* stay is inappropriate unless the party seeking the stay makes "out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to some one else."  *Id.*  The Ninth Circuit has distilled the *Landis* inquiry into a weighing of "the competing interests which will be affected by the granting or refusal to grant a stay."  *Id.* at 1110.  An unexhaustive list of interests include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice

measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.*

Northwest argues these factors weigh in favor of a stay. Specifically, Northwest maintains any hardship imposed on Cincinnati by virtue of having to continue expending defense costs is insufficient to preclude a stay. Northwest also maintains that, on the other hand, it will suffer significant hardship should it be forced to litigate on two fronts in both this action and the underlying Desjarlais lawsuit. Northwest also warns that the orderly course of justice will be impeded, should this Court wade into unresolved factual issues regarding coverage that will necessarily be resolved by the state court adjudicating the Desjarlais lawsuit.

Cincinnati sees things differently. In Cincinnati's view, both parties to this action benefit if the duty to defend and indemnification issues presented in this action are resolved without delay. Cincinnati also maintains that a stay of this matter is improper because the issues presented by this action–whether it has a duty to defend or indemnify Northwest against certain property owner claims—are ultimately distinct from the issues presented by the Desjarlais lawsuit, which advances a myriad of claims against various parties. Weighing the factors itself, the Court concludes there is an appropriate middle ground, different from the all or nothing approach advocated by the parties.

Before diving into the factors, the Court finds it prudent to discuss the

circumstances surrounding this case, which underscore the need for a stay of some but not all portions of this case.  The parties agree that multiple property owners have put Northwest on notice of claims, that more claims are possible, and that only one of them has actually proceeded to court (the Desjarlais lawsuit). (*Compare* Doc. 5 at 12 to Doc. 6 at 4, 12.)  In its operative complaint, Cincinnati seeks various declarations including that: (1) it has no duty to defend or indemnify Northwest with respect to the Desjarlais lawsuit; (2) it has no duty to defend or indemnify Northwest with respect to all other property owner claims, including an administrative complaint; and (3) it need not reimburse or indemnify Northwest for out-of-pocket settlements entered into with its consent.  (Doc. 5 at 17–21.) Northwest seeks counter declarations and advances a statutory unfair trade practices claim.  (Doc. 6 at 13–19.)

With the foregoing in mind, the Court finds it proper to split this dispute into two analytical categories for purposes of assessing whether a stay should be imposed.  On one side, are the declaratory judgment claims that relate to the Desjarlais lawsuit.  On the other side, are the declaratory judgment claims related to other property owners claims, the issue of reimbursement or indemnification for out-of-pocket settlements, and the unfair trade practices claim.  Essentially, there are the Desjarlais lawsuit claims and everything else.  The Court finds a limited stay of the Desjarlais lawsuit claims is proper but will not stay any other portion of

the case.

The Court will address the first two *Landis* factors in tandem, because they both involve weighing the possible ill effects occasioned on the parties by either staying or refusing to stay this action.  It is true, as Northwest points out, that an insurer's continued expenditure of defense costs during the course of a stay is generally insufficient to constitute "damage" in the *Landis* context.  *MS Amlin Corp. Member, Ltd. v. Bottini*, 2020 WL 5966612, *5 (S.D. Cal. 2020) ("Arguments concerning defense costs have been rejected by courts to support any prejudice to the non-moving party on a motion to stay").  The logic behind this rule is that because insurers are specifically "in the business of advancing defense costs" they cannot complain about having to do so, *Aspen American Insurance Company v. Ou*, 2019 WL 1950293, *7 (C.D. Cal. 2019), and can often subsequently recoup wrongfully expensed defense costs from the insured.  *Zurich*, 2019 WL 570760 at *5.  Consequently, the Court agrees Cincinnati's continued expenditure of defense costs as to the Desjarlais lawsuit is not a sufficient reason to deny Northwest's request for a stay.

But the Court is concerned that Cincinnati will be harmed if it is unable to begin discovery into the aspects of this case that involve other claimants than Desjarlais.  This weighs against staying this action in its entirety.  As to Northwest, the Court understands the difficulties attendant to fighting the Desjarlais lawsuit

claim on two fronts and finds this weighs in favor of a stay of the portion of
Cincinnati's claim that involves its duty to indemnify the claims advanced in that
action.  *Zurich*, 2019 WL 570760 at *5–6.  As noted above, however, this risk of
harm does not translate to the other aspects of this case, which do not depend on
resolution of the Desjarlais lawsuit.  The foregoing establishes that the first two
*Landis* factors weigh in favor of staying the Desjarlais lawsuit duty to indemnify
claim, but not any other claims advanced in this action.

　　　The Court reaches a similar conclusion as to the third factor—the orderly
course of justice.  Without question, resolution of Cincinnati's Desjarlais lawsuit
duty to indemnify claim may require this Court to wade into factual issues that will
ultimately be resolved in the Desjarlais lawsuit.  This is the state court's
prerogative and this Court will not "risk . . . making factual determinations that
may conflict with the state court's findings" on these issues.  *Id.* at 6.  Additionally,
if a stay were not granted as to the Desjarlais lawsuit duty to indemnify claim,
Cincinnati would be incentivized to improperly posture itself in a manner adverse
to Northwest's interest in that proceeding.  *Home Indem. Co. v. Stimson Lumber
Co.*, 229 F. Supp. 2d. 1075, 1086 (D. Or. 2001).  Both of these considerations
weigh in favor of entering a stay as to the Desjarlais lawsuit duty to indemnify
claim.  As with the other considerations, however, these concerns are not
implicated by any other portion of this case.

After weighing the foregoing factors, the Court concludes it should stay adjudication of Cincinnati's declaratory judgment claim regarding its duty to indemnify Northwest in the Desjarlais lawsuit. But the Court refuses to stay any other aspect of the case. Cincinnati's remaining declaratory judgment claims may proceed without delay. This includes the Desjarlais lawsuit duty to defend claim, because resolution of that issue presents a question of law resolvable without development of a factual record. *J & C Moodie Props., LLC v. Deck*, 384 P.3d 466, 473 (Mont. 2016) (holding that in order to determine whether there is a duty to defend, one need only examine the underlying complaint to assess if it "alleges facts, which if proven, would result in coverage").

Accordingly, IT IS ORDERED that Cincinnati's motion to dismiss (Doc. 12) is GRANTED.

IT IS FURTHER ORDERED that Counts II and IV of Northwest's counterclaim (Doc. 6) are DISMISSED without prejudice, for failure to state a claim upon which relief can be granted.

IT IS FURTHER ORDERED that Northwest's motion to join an indispensable party (Doc. 8) is DENIED.

IT IS FURTHER ORDERED that Northwest's request for a stay (Doc. 8) is GRANTED in part and DENIED in part, as set forth previously in this Order.

IT IS FURTHER ORDERED that further proceedings regarding an on-the

merits determination of whether the claims advanced in the Desjarlais lawsuit are

covered by the Policy are STAYED, pending resolution of the underlying

Desjarlais lawsuit.

DATED this 26th day of July, 2021.

Dana L. Christensen, District Judge
United States District Court